

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 28, 2023

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Larry Lai*, 21 Cr. 343 (SHS)

Dear Judge Stein:

  The Government respectfully submits this letter in advance of the April 4, 2023 sentencing of defendant Larry Lai in the above-referenced matter. For the reasons set forth below, the Government respectfully submits that a sentence within the United States Sentencing Guidelines (the "Guidelines") range of 27 to 33 months' imprisonment (the "Adjusted Guidelines Range"), discussed further below, would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case.

**I.** **Offense Conduct and Procedural History**

  As set forth in the PSR, the defendant was a member of a California-based money laundering organization (the "MLO") that laundered funds for a sprawling network of drug trafficking organizations ("DTOs") across the United States. (PSR ¶¶ 15-17.) During the course of its investigation into the MLO, the Drug Enforcement Administration (the "DEA") observed members of the MLO engage in approximately 95 different money pickups and/or drops, as well as numerous subsequent deposits of funds into the financial system. (*Id.* ¶ 16.) Law enforcement also intercepted communications indicating that the MLO completed at least 135 money pickups and/or drops across 23 different states, involving more than $20 million in narcotics proceeds. (*Id.*) Unsurprisingly, all of this money transmitting activity was done without a license. (*Id.*)

  Throughout its investigation, the DEA passed leads to other law enforcement agents across the country, who investigated many of the DTO customers of the MLO. (*Id.* ¶ 20.) As a result, the investigation yielded more than $14.5 million in seizures from the MLO and its DTO customers, as well as numerous kilogram-quantity drug seizures. (*Id.*) Law enforcement also obtained significant evidence of the MLO's awareness that it was illegally laundering criminal proceeds, including evidence of members of the MLO moving or cancelling pickups based on the presence of law enforcement; seizures of funds from the MLO itself on numerous occasions, including multiple seizures from the same individuals; countersurveillance measures taken by the

MLO's couriers; and denials by MLO members of knowledge or ownership of the money being seized. (*Id.* ¶ 21.)

The defendant served as a money courier for the MLO, furthering its operations primarily by conducting money pickups from DTOs. (*Id.* ¶¶ 17, 27-28.) Between April 2020 and June 2020, the defendant was observed conducting more than 10 money pickups, totaling more than $975,000. (*Id.* ¶ 27.) When conducting these money pickups, the defendant, like other members of the MLO, used "pin numbers" or "codes" as a security measure—whereby when a DTO arranged for a money delivery, it would provide the MLO with a particular serial number from a $1 bill in the possession of the MLO, and when the defendant then picked up the money from the DTO, the defendant would hand over to the DTO the $1 bill with the matching serial number. (*Id.* ¶¶ 19, 27.)

In addition to conducting money pickups, the defendant also at times stored money at his residence and aggregated it for delivery to other members of the MLO. (*Id.* ¶ 28.) Although he did not, prior to his arrest in the instant case, have any direct law enforcement contacts, money he transported was seized on several occasions shortly after he delivered it to other members of the MLO. (*Id.*)

On May 24, 2021, a grand jury returned an indictment (the "Indictment") charging the defendant with conspiracy to commit money laundering (Count One) and conspiracy to operate an unlicensed money transmitting business (Count Two), and a warrant was issued for the defendant's arrest. (ECF Nos. 2, 8.) The defendant was arrested on July 21, 2021, presented before the Honorable Katharine H. Parker, and released on certain bail conditions. (ECF No. 11.) On January 5, 2023, the defendant pleaded guilty to Count Two of the Indictment, pursuant to a written plea agreement (the "Plea Agreement").

## II.     Plea Agreement, Guidelines Calculation, and PSR

In the Plea Agreement, the parties stipulated that, based on an offense level of 19 and a Criminal History Category of I, the defendant's applicable Guidelines range is 30 to 37 months' imprisonment. The parties calculated the defendant's offense level by applying a base offense level of 22—because the defendant's money pickups involved more than $550,000 but less than $1,500,000—and a three-level reduction for acceptance of responsibility. The parties calculated the defendant's Criminal History Category based on a determination that he has one criminal history point, as a result of his 2010 conviction for trademark counterfeiting in the second degree, for which he was sentenced to five years' probation.

Following the defendant's plea, the Government entered into plea agreements with several of his co-defendants, in which the parties agreed that, if a global plea across all defendants (excluding defendant Steven Woo) was reached by February 15, 2023, a downward variance equivalent to a one-level decrease in offense level would be appropriate for each defendant. The Government subsequently extended this same agreement to defendant Lai. Because such a global plea was reached by the deadline, the Government agrees that the contemplated downward variance is appropriate here. Accordingly, the Government agrees that the defendant's appropriate offense level, incorporating the agreed-upon downward variance, is 18, resulting in an adjusted Guidelines range (the Adjusted Guidelines Range) of 27-33 months' imprisonment.

In the PSR, Probation concurs with the parties' calculation of the applicable Guidelines range set forth in the Plea Agreement (PSR ¶¶ 57-72, 113), but recommends a downward variance of 366 days' imprisonment. (*Id.* at 23.) Probation states that the offense conduct in this case is serious, given the overall scope of the scheme and the substantial amount of money involved, but suggests that the defendant was one of the "least culpable participants" because "[h]is participation was limited to approximately three months and involved the least amount of money compared to his co-conspirators." (*Id.* at 24.) Probation further observes that the defendant is 71 years old; "appears to have otherwise lived a law-abiding life, aside from a conviction sustained more than 10 years ago for which he successfully completed his probation term"; and "has dedicated himself to charitable service at his temple and remained complaint with bail conditions." (*Id.*) Probation concludes that, "due to the non-violent nature of the case and [the defendant's] acceptance of responsibility," a downward variance of "366 days' imprisonment would be sufficient, but not greater than necessary, to comply with the factors to be considered in imposing a sentence outlined in 18 U.S.C. § 3553(a)." (*Id.*)

### III.   Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any pertinent policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Case 1:21-cr-00343-SHS   Document 190   Filed 03/28/23   Page 4 of 5

Page 4

18 U.S.C. § 3553(a)(2).

"[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)); *see also United States v. Bryant*, 976 F.3d 165, 181 (2d Cir. 2020) ("In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." (quoting *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006))).

## IV.     Discussion

The Government respectfully submits that a sentence within the Adjusted Guidelines Range of 27 to 33 months' imprisonment appropriately takes into account the sentencing factors set forth in Section 3553(a), including the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the conduct, promote respect for the law, provide just punishment, and afford adequate deterrence.

The Government acknowledges that certain mitigating factors are present here. As Probation notes, the defendant is, by at least some measures, less culpable than some of his co-defendants, having conducted fewer money pickups, over a shorter period of time, involving less money. The defendant is also 71 years old and has a limited criminal history despite that advanced age, with only one prior conviction that resulted in a period of probation that he apparently completed successfully. The Government also notes Probation's observation that the defendant appears to have dedicated himself to charitable service; indeed, defense counsel represents that the defendant volunteers at his church for 6-8 hours per day. (ECF No. 182 at 1.)

Nevertheless, Probation also correctly observes that the defendant's offense conduct is serious. The defendant was part of an organization that laundered huge amounts of money for multiple drug trafficking organizations, helping to enable those DTOs to operate and inflict terrible damage upon our communities. And while the defendant's personal involvement in the MLO may have been more limited than that of certain co-defendants, his involvement was not restricted merely to one or two isolated incidents involving small amounts of currency—he was observed engaging in more than 10 money pickups involving nearly one million dollars. Furthermore, the defendant's Plea Agreement and Adjusted Guidelines Range already reflect the defendant's relative culpability, as he has already received the benefits of a plea only to Count Two of the Indictment, and a Guidelines range based by a lesser amount of laundered funds than has been applied in the cases of his co-defendants.

Balancing these considerations, the Government respectfully submits that a sentence within the Adjusted Guidelines Range of 27 to 33 months' imprisonment would be sufficient, but not greater than necessary, to achieve the objectives of Section 3553(a).

## V. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Adjusted Guidelines Range of 27 to 33 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Jonathan L. Bodansky
Matthew R. Shahabian
Assistant United States Attorneys
(212) 637-2385 / -1046

cc: David Touger, Esq.